**UNITED STATES of America, Plaintiff,**

v.

**Dustin MATHISON, Defendant.**

**No. CR12–4083–MWB.**

United States District Court, N.D. Iowa, Western Division.

Dec. 13, 2012.

Forde Fairchild, Assistant U.S. Attorney, Sioux City, IA, for Plaintiff.

F. David Eastman, Eastman Law Firm, Clear Lake, IA, for Defendant.

## ORDER

LEONARD T. STRAND, United States Magistrate Judge.

This case is before me on a motion to sever (Doc. No. 76) filed by defendant Dustin Mathison (Mathison). Plaintiff(the Government) has filed a resistance (Doc. No. 79). I heard oral arguments on December 11, 2012. Mathison did not appear personally but did appear through attorney Mark Metzgar, who consented to proceeding with the arguments despite Mathison's inability to attend. The Government

appeared through Assistant United States Attorney Forde Fairchild. The motion is now fully submitted. For the reasons I will set forth below, the motion is granted.

### BACKGROUND

On August 30, 2012, the Grand Jury returned a three-count Indictment naming five defendants. Four of the defendants are named in all three counts, which are Robbery (Count 1), Possession of a Firearm in Furtherance of a Crime of Violence (Count 2) and Possession of a Short–Barreled Shotgun (Count 3). Mathison, however, is named only in Count 3.

In the first two counts, the Indictment alleges that on or about July 13, 2012, the other four ,defendants participated in the armed robbery of Sarg's Mini Mart in Sioux City. Count 3 alleges that on the same date, all five defendants knowingly received and possessed a shotgun with a barrel length of less than 18 inches. In other words, Mathison is not alleged to have participated in the robbery but is alleged to have been one of several people who were in possession of an illegal firearm on the date of the robbery.

In his motion to sever, Mathison states that he has denied ownership of the firearm. He further states that some of the codefendants (one of whom being his own sister) have made statements that may contradict this denial. He contends that a joint trial would allow the Government to introduce these out-of-court statements at trial against his codefendants, which would have the effect of implicating him while depriving him of his Sixth Amendment right to confront witnesses. He also contends that his defense cannot be reconciled with those of the other defendants. Finally, he argues that he would be prejudiced in a joint trial by a "spillover" effect, as the other defendants are charged with crimes that are more serious and the jury may have difficulty compartmentalizing the evidence that relates only to the charge against him.

The Government, in its response, confirms that "[o]ne or more of [Mathison's] codefendants has stated [Mathison] owns the firearm." As such, the Government acknowledges that "the nature of the claims of defendant and his codefendants may be mutually antagonistic and irreconcilable." Nonetheless, the Government opposes severance and states that any potential prejudice can be avoided via redactions of codefendant statements and/or curative jury instructions. The Government also suggests that one or more of the codefendants may testify at trial, thus providing Mathison with opportunity for cross-examination.

### ANALYSIS

Pursuant to Federal Rule of Criminal Procedure 8(b), an indictment may "charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." However, Rule 14(a) allows the court to sever defendants if it appears that a defendant or the Government is prejudiced by a joinder. The grant or denial of a motion to sever is left to the court's discretion. *See, e.g., United States v. Mickelson,* 378 F.3d 810, 817 (8th Cir. 2004). The Supreme Court has held that the joinder and severance rules "are designed to promote economy and efficiency and to avoid a multiplicity of trials, so long as these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Zafiro v. United States,* 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) (internal quotations omitted).

■ A defendant seeking severance must show "real prejudice," that is, "something more than the mere fact that he

would have had a better chance for acquittal had he been tried separately." *United States v. Blaylock,* 421 F.3d 758, 766 (8th Cir.2005) (quoting *United States v. Oakie,* 12 F.3d 1436, 1441 (8th Cir.1993)). A defendant can demonstrate real prejudice by showing either (a) his defense is irreconcilable with that of his co-defendant(s) or (b) the jury will be unable to compartmentalize the evidence as it relates to the separate defendants. *Mickelson,* 378 F.3d at 818; *see also United States v. Washington,* 318 F.3d 845, 858 (8th Cir.2003); *United States v. Jackson,* 64 F.3d 1213, 1217 (8th Cir.1995). In addition, the Supreme Court has recognized that a defendant is deprived of his rights under the Confrontation Clause when a codefendant's confession that incriminates both defendants is introduced at their joint trial, even if the jury is instructed to consider that confession only against the nontestifying codefendant. *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

### A. The Confrontation Clause

■ Mathison argues that his Sixth Amendment right to confront witnesses will be violated in a joint trial because the Government will introduce out-of-court statements by codefendants who allege that Mathison was the owner of the shotgun. If those codefendants do not testify, Mathison will be unable to cross-examine them about this allegation.

The Government does not deny that this gives rise to a *Bruton* issue. However, the Government suggests that the issue can be resolved through either (a) redaction of those portions of the codefendants' statements that tend to implicate Mathison or (b) the potential testimony of those codefendants at trial. I am not persuaded that these options solve the problem.

■ Redaction of a codefendant's statement, combined with cautionary instruc-

tions, can prevent Confrontation Clause violations in some cases. *See, e.g., United States v. Williams,* 429 F.3d 767, 772–73 (8th Cir.2005). However, *"Bruton* is violated when the fact that a statement had been redacted is so obvious as to lead the jury through ordinary inferences directly to a defendant." *Id.* at 773 (citing *Gray v. Maryland,* 523 U.S. 185, 194, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998)). Here, the Government has not provided me with copies of the statements at issue or otherwise provided details about its plan to use redactions to cure any *Bruton* concerns. Instead, the Government has made a vague and rather speculative suggestion that unspecified redactions can "excise [Mathison's] existence, while still showing that the robbers acquired and returned the firearm from another person." Based on the circumstances of this case, I believe this task would be nearly impossible.

If Mathison is tried with the other defendants, the jury would learn that he is charged only with possessing the shotgun allegedly used in the robbery while the other four defendants are charged in all counts. If a codefendant's statement is simply redacted to skip over Mathison's name in referencing the source and/or ownership of the shotgun, it will still be rather obvious that Mathison is being referenced. Indeed, since he is the only defendant who is charged with being in possession of the gun on the date of the robbery but not with carrying out the robbery, even the least intuitive juror is likely to fill in the blanks.

I am likewise not persuaded by the Government's suggestion that one or more codefendants might decide to cooperate and testify at trial. While this could happen, it is pure speculation at this point. I cannot rely on the possibility of codefendant testimony to reject Mathison's Confrontation Clause arguments. If

the Government could make a direct representation that codefendants *will* testify, or that it will not offer their statements into evidence at a joint trial, the *Bruton* analysis would be different. Absent such representations, I hold that Mathison has identified a legitimate *Bruton* concern and that the Government has not offered any concrete solutions to avoid the violation of Mathison's Sixth Amendment rights at a joint trial.

### B. Irreconcilable Defenses and "Spillover"

As noted above, severance is also appropriate if the defendant shows either (a) his defense is irreconcilable with that of his co-defendant(s) or (b) the jury will be unable to compartmentalize the evidence as it relates to the separate defendants. *Mickelson,* 378 F.3d at 818.

■ The Government does not deny that Mathison's defense "may be mutually antagonistic and irreconcilable." Doc. No. 79 at 5. Some of his codefendants contend that he owns the shotgun at issue. *Id.* Mathison denies that he own it. *Id.* These are irreconcilable positions. This fact alone, however, does not automatically require severance. Irreconcilable or antagonistic defenses "require severance only when there is a danger that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." *United States v. Delpit,* 94 F.3d 1134, 1143 (8th Cir.1996) (internal quotations and citation omitted). The Supreme Court has held that a district court should grant a severance "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933. One scenario addressed in *Zafiro* is that in which two defendants claim to be innocent and each accuses the other of the crime. *Id.* at 540,

113 S.Ct. 933. Even in that situation, the Court held that it may be possible to cure any prejudice with appropriate instructions. *Id.* at 540–41, 113 S.Ct. 933.

This case does not present a situation in which only one of the five defendants charged in Count 3 can be found guilty of possessing the shotgun at issue. Because possession can be actual, constructive, sole and/or joint, the jury can find that all, some or none of the defendants were in possession. *See* Eighth Circuit Model Instruction 8.02. While there does appear to be a conflict between Mathison and certain codefendants as to whether Mathison was the "owner" of that gun, there is no danger that the jury will unjustifiably infer *that this conflict alone* demonstrates that he is guilty. In a joint trial, the jury would be instructed that each defendant is entitled to have his or her case determined individually from the evidence applicable to him or her. The jury will apply the various definitions of "possession" to each defendant and decide which, if any, were in possession of the shotgun. I find that the existence of irreconcilable positions concerning ownership of the shotgun does not justify severance.

On the other hand, I do find there is a substantial risk that Mathison is likely to be prejudiced at a joint trial due to a "spillover" effect. He is charged only with possessing an illegal firearm. While this is nothing to scoff at, it pales in comparison to the additional charges faced by his codefendants. A joint trial would be, in a large part, a trial about an armed robbery allegedly committed by the other four defendants. There is no allegation that Mathison had any involvement in that crime. Indeed, the statement of facts contained in the Government's response to Mathison's motion indicates that he is connected to this case only because the shotgun allegedly used in the robbery was found at his

home while law enforcement was investigating the robbery itself. Doc. No. 79 at 1–2.

If Mathison was charged with being a member of a conspiracy to commit robbery, then his alleged, relatively-limited involvement would not justify severance. The Eighth Circuit has stated that "disparity among the defendants in extent of involvement and culpability is commonplace in conspiracy cases and does not alone show the kind of prejudice that would require a district court to sever, rather than to respond with some less drastic measure, such as a curative instruction." *United States v. Spotted Elk*, 548 F.3d 641, 658 (8th Cir.2008); *see also United States v. Kime*, 99 F.3d 870, 880 (8th Cir.1996). But Mathison is not charged with conspiracy. He is charged only with being in possession of an illegal shotgun.

Evidence that an armed robbery occurred, and that the other defendants allegedly used the shotgun in furtherance of the robbery, has nothing to do with the issue of whether Mathison is guilty of the charge against him. In a joint trial, however, the jury would hear evidence concerning that robbery, including evidence of the alleged use of the shotgun during that robbery. The jury would then be asked, with regard to Count 3, to consider the issue of possession with regard to both Mathison, who is not charged with the robbery, and the other defendants, who are. It would be difficult for the jurors to put on blinders and evaluate the case against Mathison while giving no thought to evidence of the armed robbery. Indeed, the very fact that Mathison is being tried with the other defendants could create the impression that he must have some connection to the robbery.

In short, this is a unique situation. The sole charge against Mathison is strikingly different from the other charges in this case. Mathison is not charged with being a conspirator or having any other role in connection with those charges. I find that this is one of those rare cases in which there is a serious risk of a spillover effect that would be difficult to cure through cautionary instructions. Because of this concern, and my finding *supra* with regard to the *Bruton* issue, I hold that Mathison has met his burden of demonstrating that a joint trial would cause him to suffer "real prejudice."

### CONCLUSION

Based on the foregoing, defendant Dustin Mathison's motion to sever (Doc. No. 76) is **granted**. The date for his separate trial will be established by subsequent order.

**IT IS SO ORDERED.**